**SENT**
LESLIE PARK, ESQ.
Nevada Bar No. 8870
630 South Seventh Street
(702) 382-3847 Fax (702) 382-2828

Attorney for Defendant: ELIAS LEE SAMAHA

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEVAVDA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 2:12CR00004-028-APG-GWF |
| Plaintiff, | |
| -vs- | **SENTENCING MEMORANDUM** |
| ELIAS LEE SAMAHA | |
| Defendant. | |

### Introduction

Defendant Elias Lee Samaha ("Mr. Samaha") plead guilty to Count 12 of the Indictment charging him with Trafficking in and Production of False Identification and Aiding and Abetting, in violation of 18 U.S.C. Section 1028(a)(1), Section 1028(b)(11)(A)(ii), Section 1028(c)(2), and 18 U.S.C. Section 2. It was agreed to by the Government that the base offense level of the offense, taking into account all relevant conduct would be 37. The statutory period is 5 to 15 years. The Government agreed to the low end of the guideline range, however has subsequently filed a 5K motion in this matter.

### Sentencing Case Law

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in *Blakely v. Washington*, 124 S. Ct. 2531 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466

(2000) applies to the Federal Sentencing Guidelines. *United States v. Booker*, 125 S. Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found another relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines in the cases before the Court. *Id.* at 751. Accordingly, reaffirming its holding in *Apprendi*, the Court concluded that

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

Id. at 756.[1]

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. 3553(b)(1) or which rely upon the Guidelines mandatory nature, 18 U.S.C. 3742(e), incompatible with its Sixth Amendment holding. *Booker*, 125 S. Ct. at 756. Accordingly, the Court severed and excised those provisions, making the Guidelines effectively advisory. *Id*, at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by *Booker*,

> [r]equires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. ' 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see ' 3553(a).

*Booker*, 125 S. Ct. at 757.

Thus, under *Booker*, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. 3553(a). The primary directive in Section 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to

comply with the purposes set forth in paragraph 2. Section 3553(a)(2) states that such purposes are:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, 3553(a) further directs sentencing courts to consider the following factors:

    1)    the nature and circumstances of the offense and the history and characteristics of the defendant - 3553(a)(1);

    2)    the kinds of sentences available - 3553(a)(3);

    3)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct - 3553(a)(6); and,

    4)    the need to provide restitution to any victims of the offense. - 3553(a)(7).

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to recognize that imprisonment is *not* an appropriate means of promoting correction and rehabilitation (emphasis added).

Under 18 U.S.C. 3661, *no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may

receive and consider for the purpose of imposing an appropriate sentence (emphasis added).  This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as not ordinarily relevant to sentencing a variety of factors such as the defendants age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth.  *See* U.S.S.G. 5H1.  *See also, United States v. Nellum*, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004); *United States v. Naylor*, __ F. Supp. 2d __, 2005 WL 525409, *2, 2005 U.S. Dist. LEXIS 3418 (W.D. Va. Mar. 7, 2005) (Jones, J.) (concluding that sentence below career offender guideline range was reasonable in part because of defendants youth when he committed his predicate offenses B he was 17 B and noting that in *Roper v. Simmons,* 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

      The directives of *Booker* and 3553(a) make clear that courts may no longer uncritically apply the guidelines. Such an approach would be inconsistent with the holdings of the merits majority in *Booker*, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in *Booker*, directing courts to consider all of the 3353(a) factors, many of which the guidelines either reject or ignore. *United States v. Ranum*, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.).

As another district court judge has correctly observed, any approach which automatically gives heavy weight to the guideline range comes perilously close to the mandatory regime found to be constitutionally infirm in *Booker*. *United States v. Jaber*, __ F. Supp. 2d __, 2005 WL 605787 *4 (D. Mass. March 16, 2005) (Gertner, J.). *See also, United States v. Ameline*, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence), *rehearing en banc granted*, 401 F.3d 1007 (9th Cir. 2005). Justice Scalia explains the point well in his dissent from *Booker's* remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise if it thought the Guidelines not only had to be considered (as the amputated statute requires) but had generally to be followed its opinion would surely say so.

*Booker*, 125 S. Ct. at 791 (Scalia, J., dissenting in part).

Likewise, if the remedial majority thought the guidelines had to be given heavy weight, its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider <u>all</u> of the ' 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in ' 3553(a), these statutory sentencing factors should generally trump the guidelines. *See, United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since ' 3553(a) requires sentence be no

greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

## Application of the Statutory Sentencing Factors
## to the Facts of this Case

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

**A. Family**

Mr. Samaha resides in Michigan with his family. He is close to his ex-wife and mother of his children Sahar Samaha. He also has a close relationship with his children, Jessica Samaha, Labeed Samaha and Veronica Samaha. He has four brothers and sisters whom he is in contact with and maintains a close relationship. Mr Samaha is very close to his elderly parents and is very distressed about his fathers failing health and hopes that he will be able to see his father one last time. He is also very concerned about his mother who is having difficulty caring for his father due to her age. Mr. Samaha has a very close relationship with his friend Steve Kandahar, whom he considers a brother.

**B. Employment**

Mr. Samaha has provided for his family working in the automobile industry since 1998.

**C. Education**

Mr. Samaha completed high school in 1997 and has had some college education.

**D. Drug/Alcohol Abuse**

Mr. Samaha does not have any substance abuse addictions, however does admit to some drug use in his distaqnt past.

"The need for retribution is measured by the degree of blame worthiness which is generally assessed according to the two kinds of elements, the nature and seriousness of the harm caused or threatened by the crime and; the offenders culpability in committing a crime, in particular, (mens rea), motives, roles in the offense, and mental illness, and any diminished capacity." Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, 8th Amendment: Proportionally Relative to What?,* 89 Minn. Law Rev. 571, 590 (February 2005)

Mr. Samaha recognizes that his offenses are serious.

**F.     Need for Deterrence.**

Research has consistently shown that while the certainty of being caught and punished as a deterrent effect; "increases in severity punishments do not yield significant, if any, marginal deterrent effects". Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006). " Three National Academy of Science of Panels… reached that conclusion, as has every major survey of the evidence" *Id*. see Zvi D. Gabbay, *Exploring the Limits of Restorative of the Justice Paradigm*: *Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("Certainty of punishment is empirically known to be a far better deterrent than its severity". Typical of the findings are those of the Institute of Criminology at Cambridge University. *See Andrew Von Hirsch at el,. Criminal Deterrence and Science and Severity:* An analysis of recent research the year of 1999 summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF.   The report commission by the British home office examined penalties in the United States as well as several European countries. *Id* at 1.  It Examined the effects of changes to both the certainty and severity of punishment. *Id*

While significant correlations were found between the certainty of punishment and crime rates, the correlation between sentence and severity as crime rates…were not sufficient to achieve statistical significance. *Id* at 2  The report concluded that the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id* at 1  Research regarding white collar offenders in particular presumably the most rational potential offenders found no difference in deterrent effect of probation and that of imprisonment.  See David Weisburg et al., *Specific Deterrence in Sample of Offenders of White Collar Crimes*, 33 Criminology 587.(1995); *See Gabbay*, *Supra*, 448-49. ("There is no decisive evidence to support the conclusion that harsh sentences actually have general and specific deterrent effect on potential white collar offenders").

Mr. Samaha understands the wrongness of his conduct and that he must pay a price for his actions.  He voluntarily pled guilty with the full understanding that he would be doing a prison time.  Increasing his prison sentence would not act to deter similar conduct .  As noted above, the constant and prolonged use of drugs greatly inhibits if not destroys the ability for a person to learn from mistakes, or map out a course of action that will only benefit the person in the future rather than the present.  It was only after Mr. Connor was free from using drugs did he begin to note his future prospects and need to obtain his GED  so that he can provide for himself when he is released.

G.   The Need for Incapacitation

Although not happy about his current incarceration, Mr. Samaha has embraced his situation.  He has a plan upon release to return to work in the automobile industry, working with his best friend Steve Kandahar. Mr. Samaha looks forward to returning to work and providing for his family upon release

I.   Need to Avoid Unwarranted Disparities and Unwarranted Similarities

The court must consider the need to avoid unwarranted disparities among defendants with similar criminal histories convicted of similar criminal conduct.  18 U.S.C. §3553 (a)(6).

The court should avoid unwarranted similarities in sentencing among defendants who are different in ways not accounted for in the guideline range, *See Gall v. United States*, 552 U.S. 38, 55 (2007) ("need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated"); United States v. Ovid, 2010 WL 3940724 (E.D.N.Y. 2010) (Sentencing two defendants with similar guideline ranges to 60 months and 126 months respectively based on distinctions in circumstances of the offenses and characteristics of the defendants), and unwarranted differences among defendants whose conduct and characteristics are similar. See *United States v. Parris*, 573 F. Supp. 2d 744, 753, 756-62 (E.D.N.Y 2008.

### J. Kinds of Sentences Available

The Court must now consider all of "the kinds of sentences available" by statute 3553(a)(3), even if the "kinds of sentences…established [by] the guidelines" *See Gall*, 128 S.Ct. at 602 & n.11.

### Conclusion

For the foregoing reasons, Elias Lee Samaha respectfully submits that his incarceration since March 3, 2013 be considered and that this Court grant Mr. Samaha credit for time served.

DATED:  March 10, 2015

Respectfully submitted,

**LESLIE PARK, ESQ.**

By: _____
Leslie A. Park, Esq.
Nevada Bar No. 8870
630 South Seventh Street
Las Vegas, NV  89101
(702) 382-3847 Fax (702) 382-2828
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of the LAW OFFICE OF LESLIE A. PARK., and that on the 10th day of March , 2015, I did serve via CM/ECF transmission the foregoing **SENTENCING MEMORANDUM t**o the following:

Jonathan Ophardt
Kimverly Frayn
Assistant United States Attorney
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, NV 89101

_____
Marlena Falbi,
*An employee of the Law Office of Leslie A. Park*